UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------
MARY BASILE,

                  Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                **12-CV-837 (DRH)(WDW)**

      -against-

LEVITTOWN UNITED TEACHERS,
LEVITTOWN UNITED TEACHERS
SUPPLEMENTAL BENEFIT FUND, BOARD
OF TRUSTEES FOR THE LEVITTOWN
UNITED TEACHERS SUPPLEMENTAL
BENEFIT FUND, THERESA ROGERS, in her
individual and official capacities, DEBRA
RUOCCO, in her individual and official
capacities,

                  Defendant.

---------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiff:**
**DEVITT SPELLMAN BARRETT, LLP**
50 Route 111
Smithtown, NY 11787
By:    Jeltje DeJong, Esq.
          Joshua S. Shteierman, Esq.

**For the Defendants:**
**NEW YORK STATE UNITED TEACHERS**
52 Broadway, 9th Floor
New York, NY 10004
By:    Steven A. Friedman, Esq.

**Hurley, Senior District Judge:**

       Plaintiff commenced this action against the Levittown United Teachers (the "LUT"), the

Levittown United Teachers Supplemental Benefit Fund (the "Fund"), the Board of Trustees for

the Levittown United Teachers Supplemental Benefit Fund (the "Board"), Therese Rogers

("Rogers") in her individual and official capacities, and Debra Ruocco ("Ruocco") in her

individual and official capacities, asserting claims of discrimination and retaliation under 29 U.S.C. § 621 *et seq.,* the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 2000e *et seq.*, ("Title VII"), 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296. Before this Court is Defendants' motion to dismiss Plaintiff's ADEA claims pursuant to Rule 12(b)(1) and her § 1983 claims pursuant to Rule 12(b)(6).[1] For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following factual allegations are presumed true for the purposes of this motion.

Plaintiff worked for the LUT and the Fund from 1989 until she was fired on September 7, 2011. (Compl. ¶¶ 16, 44.) Plaintiff began her employment with the LUT and the Fund as a part-time administrative assistant. (*Id.* ¶ 16.) Plaintiff began working in that position on a full-time basis in 1994. (*Id.* ¶ 17.) "Specifically, 70% of [Plaintiff's] job responsibilities came from the [] Fund and 30% from the [LUT]; accordingly 70% of her salary was paid by the Fund and 30% by the LUT." (*Id.* ¶ 18) In 2004, Plaintiff was promoted to Office Manager of the Fund and the LUT. (*Id.* ¶ 19.) As Office Manager, Plaintiff was "responsible for inputting and updating enrollment cards of members, managing members' medical and dental claims, organizing [LUT] and Fund files, editing board minutes, fielding phone calls and working with the Treasurer of the [LUT] to manage [LUT] funds and accounts." (*Id.* ¶ 20.) The Plaintiff did the majority of this work on a computer and she was proficient in the computer programs Quicken 2004 and Quicken 2007. (*Id.* ¶ 21.) When Plaintiff was promoted in 2004, the Fund gave her a ten thousand dollar raise and began to contribute two thousand dollars annually to an IRA for her

---

[1] Plaintiff withdrew her Title VII claims against the Fund, the Board, Rogers, and Ruocco. (Pl.'s Mem. in Opp'n at 1.) Defendants withdrew their 12(b)(1) motion to dismiss plaintiff's remaining Title VII claim against the LUT. (Defs.' Reply at 2.)

2

retirement.  (*Id*. ¶ 23.)  Plaintiff also received annual raises while she held this position.  (*Id*. ¶¶ 22, 24.)  In addition, ninety percent of her health care costs were covered and she received dental and vision insurance.  (*Id*. ¶ 26).  Plaintiff signed employment contracts approximately every five years, the last of which was dated June 9, 2005 and expired June 9, 2010.  (*Id*. ¶¶ 27-28.)  Plaintiff did not sign another employment contract after that one expired, but she continued fulfilling her duties as Office Manager and was compensated accordingly.  (*Id*. ¶ 28.)

In late October of 2010, the Fund instituted a new computer program intended to modernize its recordkeeping system.  (*Id*. ¶¶ 29-30.)  On Thursday, December 2, 2010, "without any warning or prior incidents, plaintiff was ushered into a meeting with [LUT President, Defendant] Rogers and [Fund Director, Defendant] Ruocco where Plaintiff was informed that she was being demoted to part time."  (*Id*. ¶¶ 14, 15, 32.)  Plaintiff would be paid thirty-five dollars an hour, but was limited to working four hours a day, five days a week, and would not work the summer months of July and August.  (*Id*. ¶ 33.)  In addition, Plaintiff's health insurance premiums were increased, her IRA contributions were decreased to one thousand dollars, she would no longer receive paid vacation, sick, or personal days, and would not be reimbursed for her accrued sick days.  (*Id*. ¶¶ 33-34.)  The only explanation Defendant Rogers offered for the demotion was that "the LUT was making changes and [it] needed someone who was proficient [with] computers."  (*Id*. ¶ 35.)  When Plaintiff told Defendants Rogers and Ruocco that her family could not afford this demotion, Defendant Ruocco told Plaintiff, "you're 61 or 62 right, you should look into retiring."  (*Id*. ¶ 36.)  On Monday, December 6, 2010, Plaintiff retained a law firm and that firm sent a letter to the Defendants advising them to "cease and desist" of their discriminatory conduct.  (*Id*. ¶ 37.)

When Plaintiff arrived to work on Monday, December 6, 2010, her key to the office no longer worked because the locks had been changed. (*Id*. ¶ 38.) Plaintiff was let into the office by thirty-eight year old Gina Murphy ("Murphy"), whom Plaintiff claims was her replacement. (*Id*. ¶¶ 38-39.) Plaintiff then discovered that her desk had been searched and important LUT and Fund files had been removed. (*Id*. ¶ 40.) Defendant Rogers informed Plaintiff that she was no longer allowed in the office by herself and that she could no longer use the parking lot, which she had used for over twenty years. (*Id*. ¶ 41.) "[P]laintiff was relegated to spending the entire workday shredding paper or training her replacement, Murphy, how to use the appropriate computer program to process claims, as Murphy was less computer proficient than Plaintiff." (*Id*. ¶ 42.) Defendant Rogers accused Plaintiff of insubordination in front of Murphy when Plaintiff refused to vacuum the office, a job which the Fund paid a cleaning service to do on the weekends. (*Id*. ¶ 43.) On September 7, 2011, Plaintiff received a letter notifying her that she was being terminated. (*Id*. ¶ 44.)

## DISCUSSION

### I. PLAINTIFF'S § 1983 CLAIMS

*a. Motion To Dismiss Pursuant To 12(b)(6)*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent years, the Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

5

*Id.* at 678 (quoting and citing Twombly, 550 U.S. at 556–57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### *b. Documents Properly Considered on Defendants' Motion to Dismiss*

Plaintiff claims that the Fund, by and through its agent Defendant Ruocco, deprived her of her equal protection rights under the Fourteenth Amendment in violation of 42 U.S.C. § 1983. (Compl. ¶ 55.) In order to maintain a claim under § 1983, "a plaintiff must establish a deprivation of constitutional rights 'under color of state law.' " *Faraldo v. Kessler*, 2008 WL 216608, at *3 (E.D.N.Y. Jan. 23, 2008) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983)). Thus, "[§] 1983 liability may only be imposed upon wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.' " *Id*. (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)); *see also R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 445 (S.D.N.Y. 2003) ("Perhaps most importantly, excluded from the reach of Section 1983 is private conduct 'however discriminatory or wrongful.' ") (quoting *Elmasri v. England*, 111 F. Supp. 2d 212, 217 (E.D.N.Y. 2000)).

Defendants urge this Court to dismiss Plaintiff's § 1983 claim pursuant to Rule 12(b)(6) arguing that the Fund and Ruocco are not state actors. (Defs.' Mem. in Supp. at 13-15.) In particular, Defendants argue that the Fund is not a state actor but a private trust that was created "pursuant to a collective bargaining agreement ("CBA") between the LUT and the School District" and that as per the CBA "the Fund [is] controlled by certain trustees, who are to be appointed solely by the LUT," and "[t]hese trustees administer the Fund and make all decisions

relating to the Fund without supervision, control, input, or consultation with the School District." (Defs.' Mem. in Supp. at 13.) According to Plaintiff, however, the Fund "is an agent of and creation of the State" as it was "created by [the CBA] between the District and the LUT." (Pl.'s Mem. in Opp'n at 9.) In addition, Plaintiff relies on the affidavit of Martha Martin, the President of the LUT from 2000 to 2006, stating that the Fund's board of directors consists solely of district employees and the Fund's sole source of revenue comes from the district. (*Id.*)

The presentation of these materials outside of the complaint requires the Court to address as a preliminary matter, which documents it can consider in deciding the motion to dismiss. Generally, in deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan.18, 2008). Oddly enough, Plaintiff argues that the Court should not consider the CBA offered by the Defendant, even though it relies on the CBA in arguing that the Fund is an agent of the state and therefore a state actor. According to Plaintiff, this Court may not consider any extraneous materials attached to Defendants' motion because Plaintiff did not "append or refer" to them in her complaint. (Pl.'s Mem. in Opp'n at 4-5.)

Defendants respond that the materials should be considered because Plaintiff "had 'actual notice' of the documents . . . ." (Defs.' Reply at 4.) According to Defendants, *Cortec Indus., Inc. v. Sum Holding L.P.* stands for the proposition that documents "extraneous to a complaint can be considered in a 12(b)(6) motion where a plaintiff has actual notice of the documents in question." (Defs.' Reply at 3 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).) Defendants argue that Plaintiff had actual notice of the documents because, in

7

drafting her complaint, she must have "examine[d] the agreements between named defendants and the only unquestionable 'state actor' – the Levittown Union Free School District." (Defs.' Reply at 3.) However, Defendants misunderstand the Court's holding in *Cortec*. There, the Second Circuit stated that "[a] finding that a plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is *significant*," but states that plaintiff must have "relied upon these documents in framing the complaint." 949 F.2d at 47-48 (emphasis added). Because Defendants are not the first party to misconstrue the *Cortec* decision, the Second Circuit stated the proper rule of law in *Chambers v. Time Warner, Inc.*:

> Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.

282 F.3d 147, 153 (2d Cir. 2002) (citing *Cortec*, 949 F.2d at 47–48). Moreover, the plaintiff's reliance on a document renders it "integral" to the complaint. *Id.*

Here, Plaintiff did not identify the CBA, or any of the other documents at issue in the Complaint. Moreover, Plaintiff did not attach them to her pleadings. Therefore, she did not incorporate them into the Complaint by reference. *See Chery v. Commc'n Workers-CWA 1104*, 2012 WL 2061605, at *3 (E.D.N.Y. June 5, 2012) (holding that plaintiff did not incorporate by reference CBA between the plaintiff's employer and defendant union because the plaintiff did not "identify the CBA between the defendant and [his employer] as the source of the defendant's purported duty to him or reference the CBA in any way in the complaint, nor [was] the CBA attached to the pleadings") (citing *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 376-77 (E.D.N.Y. 2011). Nor is there any indication that the Plaintiff relied on the documents in drafting the Complaint. *See id.*; *cf. St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 153 n.2 (E.D.N.Y. 2010) (holding that plaintiff relied on his dissertation and related research in drafting

8

complaint alleging that defendant deliberately concealed the fact that his research yielded patentable inventions that the plaintiff was legally entitled to). Therefore, the documents at issue may not be considered for the 12(b)(6) motion to dismiss because they are not attached to the complaint, incorporated by reference, or integral to the complaint.

The Court, presented with extraneous materials as part of defendants' Rule 12(b)(6) motion, could convert the motion into a motion for summary judgment. *See Kopec v. Coughlin,* 922 F.2d 152, 154 (2d Cir. 1991) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (internal citation and quotation marks omitted); *Abbey v. 3F Therapeutics Inc.,* 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) (noting that a district court enjoys "complete discretion" over the decision to convert a Rule 12(b)(6) motion into a motion for summary judgment) (internal citation and quotation marks omitted). Generally, a district court should give parties notice of its intent to convert a motion to dismiss into a motion for summary judgment. *In re G. & A. Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir. 1985).

The Court in its discretion declines to exercise this option here. Initially, neither party has requested that Defendants' motion be converted into a motion for summary judgment. *See Key Items, Inc. v. Ultima Diamonds, Inc.,* 2010 WL 3291582, at *5 (S.D.N.Y. Aug.17, 2010) (declining to convert motion "[b]ecause neither party has expressly moved for summary judgment and because the parties have not completed discovery"). Moreover, the fact that no discovery has been taken in this action weighs heavily against conversion. *See Speedmark Transp., Inc. v. Mui,* 778 F. Supp. 2d 439, 441 n. 1 (S.D.N.Y. 2011) (declining to consider

extraneous materials or convert motion to summary judgment "since plaintiffs have not had the opportunity to take discovery from defendants") (collecting cases).

### c. *Whether Plaintiff Has Stated a Plausible Claim*

In the case at hand, in order to hold the Fund and Ruocco, both private entities, liable for the purported violation of Plaintiff's constitutional rights, Plaintiff must allege facts sufficient to support an inference that they were engaged in state action when Defendants terminated Plaintiff's position. *See Brentwood Acad. V. Tenn. Secondary School Athletic Ass'n,* 531 U.S. 288, 298 (2001) (holding that assessing whether a private entity's conduct constituted state action is a "necessarily fact-bound inquiry") (internal citation and quotation marks omitted). "[S]tate action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible *and* ... the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted). Thus, the first step of the inquiry is "identifying the specific conduct of which the plaintiff complains." *Id.* at 51 (internal quotation marks and citation omitted). Here, the relevant specific conduct is Defendants' alleged employment decisions to demote and thereafter terminate Plaintiff's position in violation of Plaintiff's constitutional rights.

As to the second element of the inquiry, where the defendant is a private entity, a plaintiff must demonstrate that the alleged infringement of federal rights was "fairly attributable to the state." *Tancredi v. Metropolitan Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (internal quotation marks and citation omitted). "For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the [s]tate and the challenged

10

action that seemingly private behavior may be fairly treated as that of the [s]tate itself." *Flagg v. Yonkers Sav. and Loan Ass'n,* 396 F.3d 178, 187 (2d Cir. 2005) (internal quotation marks and citation omitted). Accordingly, "[a] nexus of state action exists between a private entity and the state when the state exercises coercive power, is entwined in the management or control of a private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies." *Id.* (internal quotation marks and citation omitted). "It is not enough, however, for a plaintiff to plead state involvement in *some activity* of the institution alleged to have inflicted injury upon a plaintiff; rather the plaintiff must allege that the state was involved with the *activity that caused the injury* giving rise to the action." *Sybalski v. Independent Group Home Living Program, Inc.,* 546 F.3d 255, 257–58 (2d Cir. 2008) (internal quotation marks and citation omitted).

Here, looking solely at the Complaint, Plaintiff's allegations that the Fund and Ruocco are state actors are insufficient. Plaintiff alleges absent any supporting facts only that the Fund "is a municipal entity established by the Levittown [School District], a municipal body of the State of New York," and that it "exists and operates under and by virtue of the laws of the State of New York." (Compl. ¶ 12.) Moreover, Plaintiff's allegation that the "Fund, by and through [its] agent[] Debra Ruocco acting under color of law, and by and through ordinance, regulations, custom and usage," violated Plaintiff's rights is conclusory. (Compl. ¶ 55.) Plaintiff does not allude to any state actor participating in the Fund's alleged employment decisions nor does she allege any specific municipal action or policy that influenced the Fund in demoting and thereafter terminating Plaintiff's position. Furthermore, the facts alleged without more do not

11

result in a "sufficiently close nexus" between New York State and Defendants' alleged improper employment practices "so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974). As a result, Defendants' motion to dismiss Plaintiff's § 1983 claims is granted.

## II. PLAINTIFF'S CLAIMS UNDER THE ADEA

### *a. Standard of Review Pursuant To 12(b)(1)*

A defendant may move to dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff has the burden to prove subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In reviewing a motion to dismiss under Rule 12(b)(1), the Court must accept all facts in the complaint as true. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). The court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue. *Makarova*, 201 F.3d at 113.

### *b. Relevant Law*

The ADEA prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A defendant is subject to the ADEA only if, at the time of the alleged violation, the defendant was an "employer." The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year [of the

alleged violation]." 29 U.S.C. § 630(b). "The term 'employee' means an individual employed by any employer . . . ." *Id*. § 630(f).

Plaintiff initiated her claims under the ADEA against Defendants LUT, the Fund, and Rogers and Ruocco, in both their individual and official capacities, alleging that the Defendants willfully deprived her of her employment and her civil rights by discriminating against her due to her age. (Compl. ¶ 46.) Plaintiff also alleges retaliation and hostile work environment claims against all of the defendants pursuant to the ADA. (*Id*. ¶¶ 61, 69.) Defendants move to dismiss Plaintiff's ADEA claim against the LUT, the Fund, and the Board pursuant to Rule 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction because the LUT, the Fund, and the Board are not "employers" as defined by the ADEA. (Defs.' Mem. in Supp. at 5.) In her opposing papers, Plaintiff responds by arguing that this Court has subject matter jurisdiction over the ADEA claim against the LUT because the LUT is an "employer," but fails to argue for jurisdiction over the Fund or the Board. (Pl.'s Mem. in Opp'n at 5.)

*c. Analysis*

In support of its motion to dismiss Plaintiff's ADEA claims against the Fund, Defendants submit the affidavit of Defendant Ruocco to establish that the Fund was not an "employer" for the purposes of the ADEA because the Fund has only two employees: Ruocco and Gina Murphy. (Ruocco Aff. ¶ 10.) In addition, Defendants submit the affidavit of a member of the Board of Trustees, Lee Gardener, stating that "the Board's function is to oversee the operations of the Fund," and Defendants contend that the Board "has no employees and does not pay any individuals salaries or other benefits and emoluments of employment." (Defs.' Mem. in Supp. at 7.) Plaintiff has not responded to these arguments.

In support of its motion to dismiss Plaintiff's claims against the LUT, Defendants submit the affidavit of Defendant Rogers to establish that the LUT is not an employer for purposes of the ADEA. According to Rogers, during the time period applicable to the complaint, the LUT had only three full time employees – Rogers, Ruocco, and Murphy. (Rogers Aff. ¶ 21.) In addition, Rogers states that the overwhelming majority of the LUT's employees were part-time "Building Representatives," "teachers and other professionals whose primary duties consist[ed] of representing members at Executive Board meetings, collect[ing] union dues, distributing union literature and reporting contract violations." (*Id*. ¶ 22.) According to Rogers, the building representatives were not the LUT's employees for ADEA purposes because the representatives' duties were "occasional," and they generally worked "one to five hours per month" in that capacity. (*Id*.) Annexed to the Rogers Affidavit as Exhibit D "is a chart [Defendant Rogers] prepared showing the titles, descriptions of duties, and amount of time the LUT's employees worked during the calendar year" when Plaintiff was terminated. (*Id*. ¶ 18, Ex. D.)

In response, Plaintiff submits her own affidavit and the affidavit of former LUT President and former building representative, Martha Martin to establish that the LUT employed twenty-five building representatives at the time of her termination and that these representatives were employees under the ADEA. (Basile Aff. ¶ 5); (Martin Aff. ¶¶ 12, 14.) According to Martin, the building representatives were employees because they "spen[t] a portion of *every work day* during the school year fulfilling some aspect of their job responsibilities." (Martin Aff. ¶ 12) (emphasis added).

Although neither party addresses the issue, the viability of Defendants' motion hinges upon the preliminary issue of whether the threshold number of employees required by the ADEA is a jurisdictional requirement. In *Da Silva v. Kinsho Int'l Corp.*, the Second Circuit held that the

14

"threshold number of employees for application of Title VII[2] is not a jurisdictional issue." 229 F.3d 358, 366 (2d Cir. 2000). In reaching that determination, the Court relied upon the language of Title VII which states that "[e]ach United States district court . . . shall have jurisdiction of actions brought under this subchapter." According to the Second Circuit, that language "did not render the employee threshold jurisdictional," but "[r]ather, a plaintiff's failure to prove that the defendant is a covered employer is a ground for defeating her federal claim on the merits." *Newsom-Lang v. Warren Int'l*, 129 F. Supp. 2d 662, 665 (S.D.N.Y. 2001) (citing *Da Silva*, 229 F.3d at 365). Other courts have extended this analysis to claims brought under the ADEA. *See Newsom-Lang*, 129 F. Supp. 2d at 665; *see also Fagan v. JR's Hideway Restaurant*, 2011 WL 1238264 at *2, n.4 (W.D.Wash. 2011). For example, in *Newsom-Lang v. Warren International*, the court held that the language of the ADEA, stating that "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter," similarly did not render the "employee census threshold" a "jurisdictional provision of the statute." 129 F. Supp. 2d at 665. The Court, given the Second Circuit holding in *Da Silva* and agreeing with the reasoning in *Newsom-Lang*, concludes that the employee threshold is not a jurisdictional requirement under the ADEA. Therefore, Defendants have sought dismissal pursuant to Rule 12(b)(1) in error.

Given the above conclusion, the Court may "construe [plaintiff's] motion as one to dismiss under 12(b)(6) (failure to state a claim upon which relief can be granted) or, in that both parties have proffered and relied upon matters outside the pleadings, a motion for summary judgment under Rule 56." *Newsom-Lang*, 129 F. Supp. 2d at 666; *see* Section I.b *supra*. The

---

[2] Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

Court, however, declines to do either. *See id.* (declining to convert 12(b)(1) motion into motion under 12(b)(6) or a motion for summary judgment); *cf. Fraternal Order of Police, Nat'l Labor Council, USPS No. 2 v. U.S. Postal Service*, 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (finding conversion of 12(b)(1) motion to 12(b)(6) motion appropriate where plaintiffs had fully briefed the issue of whether they had stated a claim for which relief could be granted). Accordingly, defendants' motion to dismiss Plaintiff's claim against the LUT, the Fund, and the Board pursuant to 12(b)(1) is denied.

### *d. Defendants Rogers and Ruocco*

Defendants argue that the ADEA claims against Defendants Rogers and Ruocco should be dismissed because the ADEA does not subject individuals to personal liability. (Defs.' Mem. in Supp. at 8.) Plaintiff has not responded to this portion of the Defendants' motion. The Second Circuit has stated that the ADEA does not subject individuals to personal liability. *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)) ("[D]ismissal of the Title VII and ADEA claims against the individual Defendants [is] appropriate as neither statute subjects individuals, even those with supervisory liability over [a] plaintiff, to personal liability."). Therefore, Plaintiff's ADEA claims against Rogers and Ruocco are dismissed.

**Conclusion**

For the foregoing reasons, Plaintiff's § 1983 claims are dismissed without prejudice. Plaintiff's ADEA claims against defendants Rogers and Ruocco are dismissed with prejudice. In addition, Defendants' motion to dismiss plaintiff's ADEA claims against the LUT, the Fund, and the Board pursuant to Rule 12(b)(1) is denied.

**SO ORDERED.**

Dated: Central Islip, New York
      May 6, 2014

_____/s/_____
Denis R. Hurley
United States District Judge